UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

SPGGC, LLC; MetaBank; and
U.S. Bank, N.A.,
 Plaintiffs

 v.          Civil No. 04-cv-420-SM
             Opinion No. 2006 DNH 089
Kelly A. Ayotte, Attorney General,
 Defendant

## O R D E R

This case arises from the sale of prepaid gift cards by
SPGGC, LLC, in New Hampshire – cards the State says fail to meet
regulatory requirements and limitations imposed on "gift
certificates" under New Hampshire law.  When the Attorney General
threatened enforcement action, SPGGC brought this suit seeking
declaratory and injunctive relief.  In count one of its third
amended complaint, it seeks a declaration that relevant
provisions of New Hampshire's Consumer Protection Act ("CPA") are
preempted by the National Bank Act and/or the Home Owners' Loan
Act and, therefore, do not apply to it as a seller of prepaid
gift cards issued by a national bank or a federal savings
association.  In count two, SPGGC seeks a declaration that
various provisions of that state statute, if enforced against it,
would violate the Commerce Clause of the United States
Constitution.

U.S. Bank is a national bank, organized under the National
Bank Act, 12 U.S.C. § 21, et seq. (the "NBA").  MetaBank is a
federal savings association, organized under the Home Owners'
Loan Act, 12 U.S.C. § 1461, et seq. ("HOLA").  They are the
banking entities that actually own and issue the prepaid Simon
Giftcards.  After SPGGC initiated this declaratory judgment
action, the banks sought and were granted leave to intervene as
plaintiffs.

SPGGC, supported by both U.S. Bank and MetaBank, moves for
summary judgment as to both counts in its third amended
complaint.  Defendant objects.  For the reasons set forth below,
SPGGC's motion is granted in part, and denied in part.

### Standard of Review

When ruling on a party's motion for summary judgment, the
court must "view the entire record in the light most hospitable
to the party opposing summary judgment, indulging all reasonable
inferences in that party's favor."  Griggs-Ryan v. Smith, 904
F.2d 112, 115 (1st Cir. 1990).  Summary judgment is appropriate
when the record reveals "no genuine issue as to any material fact
and . . . the moving party is entitled to a judgment as a matter
of law."  Fed. R. Civ. P. 56(c).  In this context, "a fact is

2

'material' if it potentially affects the outcome of the suit and a dispute over it is 'genuine' if the parties' positions on the issue are supported by conflicting evidence." <u>Intern'l Ass'n of Machinists and Aerospace Workers v. Winship Green Nursing Ctr.</u>, 103 F.3d 196, 199–200 (1st Cir. 1996) (citations omitted).

## Factual Background

I.   <u>General</u>.

SPGGC, LLC ("Simon") is an affiliate of Simon Property Group, L.P., which owns and operates shopping malls across the United States, including three in the State of New Hampshire. Simon is not a bank, a bank subsidiary, or a bank affiliate.  In August of 2001, Simon began selling the Simon Visa Giftcard (the "Giftcard").  It has been available in Simon malls in New Hampshire since 2003.  According to Simon, it is currently selling the Giftcard in 35 states, as well as over the Internet.

The Giftcard is a prepaid electronic stored value card.  It looks like a credit card or bank debit card, consisting of an embossed plastic card with a magnetic information strip on the back, which operates on the Visa debit infrastructure.  The card is accepted worldwide, wherever Visa debit cards are accepted (both online and in person), including locations that are not

affiliated with Simon malls.  According to MetaBank, that involves more than 30 million merchants in over 150 countries.

The purchaser of a Giftcard specifies the amount, or value, that he or she wishes to place on the Giftcard and a balance in that denomination (less an initial "handling fee") is established on the card.  Unlike a traditional gift certificate, however, the Giftcard can be replaced if lost or stolen, and its owner is not responsible for unauthorized uses of the card.  But, according to plaintiffs, in order to comply with Visa fraud prevention and card maintenance requirements, all Giftcards, including those sold in New Hampshire, must bear an expiration date.

Also unlike a traditional gift certificate, several fees and charges are associated with the Giftcard, which plaintiffs say are levied in order to recover administrative costs associated with maintaining the Giftcard program.  The State asserts that those other fees, to the extent they diminish the total amount for which the Giftcard may be redeemed, as well as the fact that the Giftcards have an expiration date, violate specific provisions of New Hampshire's Consumer Protection Act applicable to gift certificates.

4

II.  Simon's Various Giftcard Programs.

From the program's inception in 2001, through August of 2005, Simon Giftcards were issued through Bank of America ("BoA").  Under Simon's agreement with BoA, all Giftcards and cardholder agreements were required to identify BoA as the issuer of the Giftcard.  According to Simon, BoA was responsible for the design of the cards and could make changes to them and the cardholder agreements at any time (though it appears that BoA generally deferred to Simon on that issue).  And, says Simon, it acted simply as BoA's agent for the purpose of marketing, selling, and servicing the Giftcards.  Unlike the current Giftcard programs, all funds generated by the sale of the Giftcards and all fees and charges associated with the Giftcard program were remitted to Simon.  For its part, BoA was compensated in the form of a "transaction fee" for each Giftcard transaction that generated interchange fees from VISA.[1]

---

[1]    According to Simon, "Giftcard transactions are modeled on credit card transactions, in which the merchant who accepts a credit card as payment actually receives only about 98% of the charged price of the item.  The remaining 2% is called the "merchant discount," which is a fee paid to the merchant's acquiring bank for providing its services.  The acquiring bank splits this fee with the card-issuing bank, which is paid approximately 1.4% of the purchase price.  The 1.4% is called the 'interchange fee.'" Simon's memorandum (document no. 36-2) at 10 n.12.

5

In July of 2005, Simon entered into agreements with both U.S. Bank (a national bank) and MetaBank (a federal savings association) for the purpose of promoting and selling the Simon Visa-branded Giftcards.  Although the individual agreements are distinct, they generally describe similar programs, under which the bank owns and issues the Giftcards, defines the relationship between the bank and the consumer (i.e., the purchaser/holder of the Giftcard), and establishes the various fees associated with the cards.  Simon is responsible solely for promoting and selling the Giftcards and lacks any authority to alter the terms or conditions of the contractual relationship between the purchaser/holder of the Giftcard and the issuing bank.

It appears that the Simon Giftcards sold over the Internet are issued by Metabank, while those sold at Simon malls are issued by U.S. Bank.  Under the terms of the agreement between U.S. Bank and each purchaser/holder of the Giftcard, the following fees and charges apply to the Giftcards: an initial $2.00 "handling fee," a $2.50 monthly "service fee" (which is waived during the first 12 months), a $5.00 "lost or stolen card" fee, and a $15.00 "balance transfer or cash-out fee" upon the Giftcard's expiration.  Unlike prior Simon Giftcards, there is no balance inquiry fee, nor is there a "customer service" fee.  The

6

new Simon Giftcards expire a minimum of 20 months after purchase. The fee schedule applicable to cards issued by MetaBank is similar ($5.95 handling fee, $2.50 monthly administrative fee beginning 12 months after issuance of the card; $5.00 fee to replace lost or stolen card; and $15.00 fee to replace an expired card). Simon began selling Giftcards pursuant to its agreements with U.S. Bank and Metabank in September, 2005.

When Simon sells a Giftcard to a consumer, it collects payment from the consumer and a corresponding amount (less the initial handling fee) is loaded onto the card. Simon also provides the consumer with a copy of the Giftcard agreement between the consumer and the issuing bank. The funds collected by Simon are deposited into an account at the bank. U.S. Bank says it accounts for the value loaded onto each Giftcard as a liability running from the bank to the consumer, and it books the fees collected as part of the Giftcard sale as income. At the end of each quarter, U.S. Bank pays a commission to Simon, based on the total amount of Giftcard value sold, which commission U.S. Bank books as an expense. As the consumer redeems the Giftcard, U.S. Bank remits monies to merchants through the Visa settlement network. If any additional fee-generating events occur (e.g., replacement of a lost or stolen card), those fees are imposed by

(and retained by) U.S. Bank.  Although the record is not entirely clear on this point, the court assumes that MetaBank's accounting practices are substantially similar.

III. <u>The State Court Litigation</u>.

The New Hampshire Consumer Protection Act, N.H. Rev. Stat. Ann. ("RSA") ch. 358-A, establishes rules governing the sale of gift certificates within the State of New Hampshire.  That statute broadly defines a gift certificate as "a written promise given in exchange for payment to provide the bearer, upon presentation, goods or services in a specified amount."  RSA 358-A:1 IV-a.  Among other things, the Consumer Protection Act provides that gift certificates of $100 or less shall not have expiration dates.  RSA 358-A:2 XIII.  It also prohibits any "[d]ormancy fees, latency fees, or any other administrative fees or service charges that have the effect of reducing the total amount for which the holder may redeem a gift certificate."  <u>Id.</u>

On November 1, 2004, the State of New Hampshire notified Simon that its sale of Giftcards in this state violates various provisions of the CPA.  Accordingly, it informed Simon of its intention to file an enforcement action under that statute to halt the sale of Simon Giftcards in New Hampshire.  In

anticipation of that enforcement action, on November 12, 2004, Simon filed suit for declaratory and injunctive relief in this court.  Three days later, the State filed its own complaint against Simon in the New Hampshire Superior Court (Merrimack County), alleging numerous violations of the CPA.

Simon moved to dismiss the State's complaint in the superior court action, alleging that the CPA does not regulate its Giftcards.  In essence, Simon asserted that its Giftcard is not a "gift certificate," as defined by the CPA and, therefore, is not subject to the restrictions imposed by the CPA.  The state superior court disagreed, concluding that the Simon Giftcard is a "gift certificate" as contemplated by the CPA and, therefore, is subject to the restrictions and limitations imposed on the sale of gift certificates by that statute.  But, aware of the ongoing litigation in this court, the state court stayed all further proceedings before it, pending this court's resolution of plaintiffs' federal constitutional and preemption challenges.

## Discussion

At this juncture, the court need not address whether the various Giftcard programs historically administered by Simon were subject to the provisions of New Hampshire's CPA.  Simon's third

amended complaint focuses on its current Giftcard programs, which are now administered in association with U.S. Bank and MetaBank. While Simon's past Giftcard programs are, at least in part, the subject of the ongoing state court litigation, this court is not inclined to exercise its discretion to resolve a legal issue central to that litigation but not at issue here.

One important purpose of the Declaratory Judgment Act is to inform the parties of their legal rights and obligations so, going forward, they can alter their behavior, act in compliance with applicable law, and prevent further damages from accruing. See, e.g., Ernst & Young v. Depositors Economic Protection Corp., 45 F.3d 530, 534 (1st Cir. 1995) ("The Declaratory Judgment Act serves a valuable purpose.  It is designed to enable litigants to clarify legal rights and obligations before acting upon them."). Here, of course, there is no threat of additional (allegedly) wrongful conduct on the part of Simon with regard to its prior Giftcard programs.  To the extent any of those programs ran afoul of state law, there is little threat that Simon will revive them. Consequently, damages (if any) flowing from those programs have been fixed and the allegedly wrongful conduct has ceased.

Accordingly, in the exercise of its discretion, the court declines Simon's invitation to rule on its claims relating to prior, now defunct, Giftcard programs.  See generally Ernst & Young, 45 F.3d at 534 ("Because the Act offers a window of opportunity, not a guarantee of access, the courts, not the litigants, ultimately must determine when declaratory judgments are appropriate and when they are not.  Consequently, federal courts retain substantial discretion in deciding whether to grant declaratory relief.  As we have stated, the Declaratory Judgment Act neither imposes an unflagging duty upon the courts to decide declaratory judgment actions nor grants an entitlement to litigants to demand declaratory remedies.") (citations and footnote omitted).  The state court has concurrent jurisdiction to address those legal issues and it is, of course, fully capable of resolving them.  If appropriate, it is equally capable of calculating damages stemming from Simon's past conduct.  This court will focus, instead, on the ongoing Giftcard programs and the current legal rights and obligations of Simon, U.S. Bank, and MetaBank.

I.   Background.

In count one of its third amended complaint, Simon asserts that provisions of New Hampshire's Consumer Protection Act:

11

> are not applicable to the seller of prepaid electronic
> stored value gift cards issued by a national bank or
> federal savings bank, such as the Simon Visa Giftcard,
> because of federal preemption by the National Bank Act
> of 1864, 12 U.S.C. § 21 et seq., and regulations issued
> by the Office of the Comptroller of the Currency, and
> by the Home Owners' Loan Act, 12 U.S.C. § 1461, et
> seq., and regulations issued by the Office of Thrift
> Supervision.

Id. at para. 2.  In Simon's view (which is shared by both U.S.

Bank and MetaBank), the national banking laws, combined with the

broad supervisory authority over national banks and federal

savings associations that Congress vested in the Office of Thrift

Supervision ("OTS") and the Office of the Comptroller of the

Currency ("OCC"), are exclusive and serve to "preempt conflicting

state regulation with respect to all banking activities,

including those of parties engaged in the business of banking in

concert with national banks."  Simon's memorandum (document no.

36-2) at 26.  And, says Simon, any claims against it relating to

the administrative charges and fees imposed by the banks are

actionable exclusively under federal law, which law preempts

related state law claims.

For its part, the State does not assert that either U.S.

Bank or MetaBank lacks authority to issue the Giftcards.  Nor

does it seriously contend that the provisions of the New

Hampshire CPA would (or even could) control the terms and
conditions of the Giftcards if they were sold directly to
consumers by U.S. Bank and/or MetaBank – in fact, it appears that
both banks currently sell stored value cards through the Internet
(available for purchase in New Hampshire), which are
substantially similar to the Simon Visa Giftcard.  The State has
not challenged those products as violating the New Hampshire CPA.
Nevertheless, because the Giftcards are promoted and sold by
Simon, as agent for the banks, the State asserts that the CPA is
not preempted by federal banking laws and may properly be applied
to the Giftcards sold by Simon.

> The State does not question the Banks' authority to
> contract with non-bank third parties to distribute bank
> products.  It merely asserts that federal preemption
> does not extend to those non-bank third parties who
> therefore must abide by state law.

Defendant's supplemental memorandum (document no. 84) at 4.  In
other words, because the Giftcard is sold by Simon – a non-bank
entity – the State asserts that federal banking laws do not
preempt the limitations the CPA would otherwise impose on the fee
structure of the Giftcard.

> The State's action to enforce the Consumer Protection
> Act remains against Simon, and only against Simon.
> Entry by the Banks [as intervenors] into this case does
> nothing to rectify the remoteness of the relationship

>     between a consumer and the Banks.  Simon is still not a
>     national bank, thus the Simon Giftcard is still not a
>     bank product.

Id. at 6.  The court disagrees.


II.  Preemption.

"A fundamental principle of the Constitution is that
Congress has the power to preempt state law."  Crosby v. National
Foreign Trade Council, 530 U.S. 363, 372 (2000).  Federal law can
preempt state law in three ways.  First, Congress can explicitly
declare that state regulation in a particular area is preempted
by federal law.  See, e.g., Beneficial Nat'l Bank v. Anderson,
539 U.S. 1, 6-7 (2003).  Second, federal preemption may be
inferred when congressional regulation of a particular field is
"so pervasive as to make reasonable the inference that Congress
left no room for the States to supplement it."  Rice v. Santa Fe
Elevator Corp., 331 U.S. 218, 230 (1947).  Finally, state
regulations are preempted when those regulations actually
conflict with federal regulations or when state law "stands as an
obstacle to the accomplishment and execution of the full purposes
and objectives of Congress."  Hines v. Davidowitz, 312 U.S. 52,
67 (1941).  See also Florida Lime & Avocado Growers, Inc. v.
Paul, 373 U.S. 132, 142-43 (1963).

In interpreting national bank legislation, the Supreme Court has consistently construed "grants of both enumerated and incidental 'powers' to national banks as grants of authority not normally limited by, but rather ordinarily pre-empting contrary state law." Barnett Bank v. Nelson, 517 U.S. 25, 32 (1996). "In defining the pre-emptive scope of statutes and regulations granting a power to national banks, [our cases] take the view that normally Congress would not want States to forbid, or to impair significantly, the exercise of a power that Congress explicitly granted." Id. at 33.

Here, federal regulations authorize both U.S. Bank and MetaBank to issue stored value cards, such as the Simon Visa Giftcard. See, e.g., 12 C.F.R. § 7.5002(a)(3) (authorizing national banks to offer "electronic stored value systems"); 12 C.F.R. § 555.200(a) (authorizing federal savings associations to use "electronic means or facilities to perform any function, or provide any product or service, as part of an authorized activity"). See also Exhibit 1 to MetaBank's motion to supplement (document no. 87-2), OTS Opinion Letter P-2006-3 (June 9, 2006) at 3 (discussing the multiple sources of authority for federal savings associations to issue stored value cards). Implicit in that grant of authority to issue stored value cards

15

is the "incidental" power to establish the conditions under which those cards are issued and employed (including fee schedules and expiration dates) – subject, of course, to applicable federal (rather than state) consumer protection laws.  See generally, OCC 98-31, Guidance of Electronic Financial Services and Consumer Compliance, 1998 WL 460874 (July 30, 1998).

Consequently, state statutory or regulatory provisions which purport to limit fees that may be charged to the holder of a stored value card, or otherwise impose restrictions on the contractual relationship between the cardholder and the issuing national bank or federal savings association are preempted.  See generally Bank of America v. City & County of San Francisco, 309 F.3d 551 (9th Cir. 2002) (discussing the preemptive effect of HOLA and OTS regulations); Wells Fargo Bank of Texas v. James, 321 F.3d 488 (5th Cir. 2003) (discussing the preemptive effect of the NBA and OCC regulations).  See also Exhibit 1 to MetaBank's motion to supplement (document no. 87-2), OTS Opinion Letter P-2006-3 (June 9, 2006) (discussing federal preemption of state gift card restrictions); 12 C.F.R. § 7.5002(c) (noting that "State laws that stand as an obstacle to the ability of national banks to exercise uniformly their Federally authorized powers through electronic means or facilities, are not applicable to

16

national banks"). As the District Court for the District of Connecticut recently observed:

> Because the OCC explicitly authorizes national banks to charge [their] customers fees, any state law that impairs a national bank from exercising its federally authorized power to charge fees could arguably be preempted by the NBA. The rationale underlying that conclusion is that Congress has clearly expressed its intent for national banks to be regulated by federal authority. Complying with both laws could cause an irreconcilable conflict, because the OCC has ruled that, when it explicitly authorizes a national bank to exercise a power, a state may not infringe that authorization.

Blumenthal v. SPGGC, Inc., 408 F. Supp. 2d 87, 93-94 (D.Conn. 2006) (citation omitted).


The question remains, however, whether the State may enforce provisions of the CPA against Simon (rather than either of the issuing banks), or whether Simon, as issuing agent of those banks, is also protected from local regulation by principles of federal preemption. In essence, while the State implicitly concedes that the banks are authorized to sell the Giftcards in New Hampshire (free from regulation under the State's CPA), it claims they cannot use Simon as their agent to conduct such sales. See generally Transcript of February 28, 2006 hearing (document no. 80). The State asserts that, by employing Simon as

a sales agent, the issuing banks have removed themselves too far

from the consumer/purchaser for principles of preemption to

apply.  Id.  In other words, while the State concedes that it

cannot directly prevent U.S. Bank or MetaBank from issuing stored

value cards in New Hampshire that bear user fees and expiration

dates, it believes it can achieve that goal indirectly by

preventing Simon from marketing and selling those cards on behalf

of the banks.  It cannot.


III. <u>Use of Third Parties</u>.

    The central issue presented in this case is whether the

involvement of Simon as promoter/seller of the Giftcards exposes

those cards to state regulations which would otherwise be

preempted by federal banking laws.  Or, viewed from a slightly

different perspective, the question is whether Simon's

involvement in the Giftcard program is so substantial and its

relationship with Giftcard consumers so close that it renders the

banks' involvement too remote to properly consider the Giftcard a

national bank product.


    Merely because the Giftcard is sold by Simon does not compel

the conclusion that it is not a bank product.  First, both

national banks and federal savings associations are specifically

18

authorized to use third parties to carry on the business of banking.  See, e.g., 12 U.S.C. § 24 Seventh (authorizing national banks to use agents to conduct banking business); Exhibit C to MetaBank's supplemental memorandum (document no. 83), Office of Thrift supervision, Thrift Bulletin 82a (September, 2004) (discussing savings association's use of third parties to provide assistance in providing banking services).  See generally Franklin Nat'l Bank v. New York, 347 U.S. 373 (1954).  And, as U.S. Bank points out, national banks routinely establish relationships with non-banking entities in order to market and/or distribute the national bank's products.  Examples include: (1) issuance of private label credit cards (e.g., department store credit cards); (2) issuance of co-branded credit cards; (3) use of mortgage brokers to solicit real estate loans; (4) use of automobile dealers to solicit loans to finance motor vehicles; and (5) the use of third parties to solicit tax refund anticipation loans.  See, e.g., Cades v. H & R Block, Inc., 43 F.3d 869 (4th Cir. 1994).

In none of those circumstances does the mere involvement of a third party render the product being sold something other than a national bank product.  Nor does the involvement of the third party automatically subject the product to state regulation.  The

cases involving payday lenders and tax refund anticipation loans cited by the State do not undermine this legal principle.  <u>See</u> Defendant's memorandum (document no. 41-2) at 4-5.  Rather, those cases deal primarily with removal jurisdiction and complete preemption and/or fraudulent or deceptive conduct by the agent of the bank – issues not present in this case.

The State's reliance on the court's preemption analysis in <u>Blumenthal</u>, <u>supra</u>, is also misplaced.  In that case, the challenged monthly maintenance fees were charged by and retained by SPGGC, not the issuing bank.  As the court noted, the issuing bank "does not profit from the monthly maintenance fees.  Rather [the bank] earns its profit on the card by way of the interchange fees from Visa on a per-transaction basis."  408 F. Supp. 2d at 94.  Thus, it was SPGGC (a non-banking entity) that was charging and profiting from fees imposed on holders of stored value cards that arguably violated state law.  That is a critical factual difference from the case at hand, in which the issuing banks levy the various fees (which are disclosed to the customer and form part of his or her contract with the issuing bank) and establish the expiration dates for the Giftcards.

Moreover, as distinct from the facts pled in <u>Blumenthal</u>, Simon's role as sales and marketing agent for both U.S. Bank and MetaBank is quite circumscribed.  Its involvement in the U.S. Bank Giftcard program is limited to: marketing of the program; maintenance of an inventory of Giftcards; the sale and initial collection of funds from the consumer; activation and loading of the Giftcard; the physical transfer of the Giftcard to the consumer, along with a copy of the agreement between the consumer and U.S. Bank; and the remission of collected funds to the bank. Unlike earlier Giftcard programs, Simon is not compensated through the collection of fees imposed on Giftcard holders – those sums are retained by the issuing banks.  Instead, consistent with its role as sales agent, Simon is compensated through a sales-based commission.

Moreover, Simon has no authority to alter the terms of the Giftcards, the associated fee schedule, the substantive terms of the disclosures provided to the purchaser, or the terms and conditions of the contractual relationship that arises between the consumer and the issuing bank.  Those aspects of U.S. Bank's relationship with the consumer are governed by the contract between the bank and the consumer.  And, they are subject to

federal banking laws and regulations, as well as the regulatory
oversight of the OCC.

Simon's involvement in the MetaBank Giftcard program appears
to be even more limited than its role in the U.S. Bank program:
Simon markets the cards issued by MetaBank at its various malls
and through its Web site.  Like the U.S. Bank Giftcard program,
the relationship between the consumer and MetaBank is governed by
the contract between those parties.  Simon lacks authority to
alter the terms of that contractual relationship.  Finally, the
contractual relationship between MetaBank and the Giftcard
consumer is overseen by federal regulators – in this case, the
OTS – and is subject to federal banking laws and regulations.

Plainly, then, the relationship between the issuing bank and
the Giftcard consumer is substantial, the terms of which are
established by the issuing bank.  Simon's involvement in the
marketing and sale of those Giftcards on behalf of the issuing
banks does not alter or even attenuate that relationship.  See
generally Krispin v. May Dep't Stores Co., 218 F.3d 919 (8th Cir.
2000) (recognizing that, for purposes of determining the legality
of late fees charged to customers, the true party in interest was
the national bank that issued the credit, processed and serviced

22

customer accounts, and set terms such as interest rates and late fees).  Consequently, the terms of the relationship between the Giftcard consumer and either U.S. Bank or MetaBank (including the fee schedule and provisions regarding expiration dates) are governed by federal banking law.  State law, to the extent it purports to regulate the terms or essential aspects of that relationship, is preempted.

The essence of the State's argument in favor of application of the gift certificate provisions of the CPA against Simon is this: "[T]he enforcement of the Consumer Protection Act will not frustrate any purpose of Congress [by hindering the operations of a national bank or federal savings association], as only Simon will be affected, not the Banks."  State's reply (document no. 84) at 6.  Plainly, that perspective is unrealistic.  If the State were able to enforce provisions of its CPA against Simon, one of two consequences would necessarily follow: either the banks would be required to stop all sales in New Hampshire of the Simon Visa stored value Giftcard, or the banks would have to alter the terms and conditions of the contractual relationship between themselves and purchasers of those Giftcards to comply with local law.  Given that the Giftcards are banking products issued by federally chartered and federally regulated banks, the

State cannot force those banks to elect between those options.

Overseeing the terms and conditions of the Simon Giftcard, as

well as those of the contractual agreement between purchasers of

the Giftcard and the issuing bank, are matters for federal

regulators, not the individual states.  If there are to be any

restrictions on fees associated with the Giftcards, or

limitations imposed on expiration dates, they must come either

from Congress or the federal agencies empowered by Congress to

oversee national banks and federal savings associations.


### Conclusion

The Simon Visa Giftcards, as currently marketed, are

national banking products.  Each Giftcard is owned and issued by

either U.S. Bank or MetaBank.  The contractual relationship

arising out of the purchase of a Simon Visa Giftcard is between

the issuing bank and the customer; that bank (not Simon) sets the

fee schedule, as well as the terms and conditions governing the

use, replacement, and expiration of the Giftcards.


Relevant federal banking regulations authorize both U.S.

Bank and MetaBank to issue electronic stored value cards such as

the Simon Giftcard.  They also authorize those banks to employ

the services of third parties, like Simon, to promote and sell

their products.  Under the circumstances of this case, Simon's role in promoting the Giftcard program and selling the Giftcards does not alter the fact that the Giftcards are federal banking products.  Accordingly, the relationship between the issuing bank and the purchaser of a Giftcard – including the terms and conditions governing use of the Giftcard, as well as the associated fee structure – is governed by federal law.  To the extent state laws, like New Hampshire's Consumer Protection Act, attempt to impose additional restrictions or limitations on that relationship, they stand as an obstacle to the fulfillment of Congressional policies and goals embodied in federal banking laws and the associated regulations implemented by both OTS and OCC. See Barnett Bank, 517 U.S. at 31.

Stated slightly differently, those aspects of the Simon Giftcard with which the State takes issue – the expiration date and the imposition of fees that have the effect of diminishing the purchased value of the card – are terms that are set by the issuing banks, not Simon.  Because those banks are (1) subject to federal banking laws and regulations, and (2) specifically authorized to issue stored value cards such as the Giftcard through third parties, the CPA cannot operate to restrict or otherwise limit those aspects of the Giftcard.  This is true

25

notwithstanding the fact that, as the State repeatedly points out, its enforcement action is directed exclusively against Simon, not the issuing banks.  In pursuing Simon, the State is indirectly attempting to accomplish that which it cannot do directly: regulate, in New Hampshire, the terms and conditions of stored value cards issued by national banks and federal savings associations.

Moreover, the State's assertion that the terms and conditions of Giftcards sold in New Hampshire <u>could</u> be altered to comply with provisions of the CPA is of little moment.  The question presented is whether the State can compel the banks to alter those terms to comply with the CPA (or, from the State's perspective, whether it can force Simon to stop selling the Giftcards in New Hampshire unless and until the banks change the terms of their contracts with individual Giftcard purchasers).  As noted, the State lacks such authority.

Of course, if this case involved allegations of, say, fraudulent conduct or unfair business practices on the part of Simon, such claims would probably not be preempted.  But, no such claims are made here.  The sole legal issue is whether the State can, by attempting to enforce provisions of the CPA against

Simon, prevent U.S. Bank and MetaBank from imposing various fees on their customers and setting expiration dates on the Giftcards which federal law allows.  It cannot.

For the foregoing reasons, as well as those set forth in the memoranda submitted by Simon, MetaBank, and U.S. Bank, the court concludes that the provisions of the New Hampshire CPA which the State seeks to enforce against Simon with respect to the current Giftcard program are preempted by federal banking laws.  Simon's motion for summary judgment (document no. 36) is, therefore, granted to the extent it seeks a declaratory judgment to that effect.  Having resolved that issue in favor of plaintiffs, the court need not address Simon's assertion that enforcement of the CPA against it is precluded by the Commerce Clause.  Accordingly, in all other respects, Simon's motion is denied as moot.

The parties' cross-motions to strike (documents no. 61 and 63) are denied.  And, finally, the parties' various motions for leave to file supplemental authority (documents no. 87, 88, 90, and 91) are granted.

The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

Steven J. McAuliffe
Chief Judge

August 1, 2006

cc:  David E. Melaugh, Esq.
     James R. McGuire, Esq.
     Margaret M. Pinkham, Esq.
     Paul W. Shaw, Esq.
     Marc R. Scheer, Esq.
     Bruce W. Felmly, Esq.
     Richard W. Head, Esq.
     David A. Rienzo, Esq.